# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  '24  MJ4326
Apple iPhone (inventoried as #412 2024 IE 000245) and )
Apple iPad, Model A1490, Serial #DMPR58F1FLMJ )
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein,

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1029(a)(2), (b)(2) | Access Device Fraud Conspiracy |
| 18 USC 1029(a)(2), (b)(1) | Use and Attempted Use of Unauthorized Access Devices |

The application is based on these facts:
See Attached Affidavit of USSS Special Agent Erik La Com, incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

USSS Special Agent Erik La Com
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: 11/18/2024

*Judge's signature*

City and state:  San Diego, California                Hon. Allison H. Goddard, US Magistrate Judge
                                                                                *Printed name and title*

## STATEMENT OF FACTS

I, Erik La Com, being duly sworn, state as follows:

1. This affidavit is in support of an application by the United States of America for a warrant to search the following electronic devices, as described in Attachment A:

   a. Apple iPhone (inventoried as #412 2024 IE 000245) ("**Target Device-1**");

   b. Apple iPad, Model A1490, Serial #DMPR58F1FLMJ ("**Target Device-2**");

(collectively, the "**Target Devices**") for items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C. §§ 1029(a)(2) (unauthorized access devices) and 1029(b)(2) (conspiracy), as described in Attachment B. For **Target Device-1** the search period will be April 1, 2023 through and including September 5, 2024. For **Target Device-2** the search period will be April 1, 2023 through and including January 31, 2024. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

## EXPERIENCE AND TRAINING

2. I have been employed as a Special Agent ("SA") with the United States Secret Service ("USSS") since June 2010. I am currently assigned to the SoCal Cyber Fraud Task Force (SoCal CFTF). The SoCal CFTF is a task force sponsored by the USSS that is comprised of state, local, and federal law enforcement agents. In this capacity, my duties are to investigate violations of federal and state law, including financial crimes and related activity in connection with the fraudulent use of access devices, credit card skimming/re-encoding, identity theft, wire fraud, mail fraud, check fraud, bank fraud, and the manufacturing of counterfeit currency/commercial securities, and the use of complex schemes to conceal and launder the proceeds of such crimes. I am familiar with the criminal elements and schemes commonly employed by persons who commit these types of violations. I am also familiar with the use of computers and

specialized electronics to commit these crimes, and I have arrested suspects who have utilized computers and specialized electronics to commit EBT theft, identity theft, credit and debit card fraud, and the manufacturing of counterfeit United States currency.

3. I am also a digital forensic examiner for the USSS and a member of the Electronic Crimes Special Agent Program (ECSAP). My training includes, but is not limited to, recovering evidence of hacking, network intrusion, data compromise, etc., the capture and analysis a forensic image of a hard disk drive, acquiring random access memory (RAM) for analysis, the capture and analysis of a cellphone, skimmers, vehicle infotainment systems or other mobile device storage for analysis, maintaining the integrity of computer forensic analysis and evidence, and verifying the integrity of computer systems. I have testified as a computer expert witness in State and Federal court.

4. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this and related investigations into California Electronic Benefit Transfer (EBT) fraud; my review of documents and records related to this and related investigations; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during this investigation. Dates, times, and amounts are approximate.

## STATEMENT OF PROBABLE CAUSE

*Overview*

5. The USSS and the SoCal CFTF are working with state and federal agencies to investigate the theft and misuse of funds electronically distributed to individuals receiving public assistance. As part of this investigation, the SoCal CFTF identified

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
-2-

three coconspirators, Robert Stoica ("STOICA"), Chaima Chaabani ("CHAABANI"), and Mihai Viorel Stefan ("STEFAN"), who have repeatedly made unauthorized EBT withdrawals at San Diego-area ATMs and stole, or attempted to steal, from the public assistance benefit accounts of over 100 victims.

6. On September 11, 2024, U.S. Magistrate Judge Benjamin J. Cheeks signed a Complaint charging STOICA, CHAABANI, and Stefan with Access Device Conspiracy, in violation of 18 U.S.C. § 1029(a)(2) and (b)(2) (Count 1), and one count charging just STOICA with Use and Attempted Use of Unauthorized Access Devices (Count 2). The affidavit submitted in support of the Complaint described how members of the conspiracy used stolen electronic benefit transfer (EBT) account information issued to public benefit recipients to make unauthorized withdrawals from those recipients' EBT accounts.

7. On October 7, 2024, U.S. Magistrate Judge Daniel E. Butcher arraigned STOICA and CHAABANI in the Southern District of California. STOICA retained Nicolai Cocis as counsel and Judge Butcher appointed Federal Defenders of San Diego, Inc. to represent CHAABANI. STEFAN remains at large and his current whereabouts are unknown.

8. On November 14, 2024, the government lodged a copy of a signed plea agreement executed by STOICA. STOICA is scheduled to plead guilty to both Counts 1 and 2 on November 19, 2024. As part of his plea agreement, STOICA agreed to the forfeiture of any property used in connection with or purchased with proceeds of his charged criminal conduct. **Target Device-1** will therefore be subject to forfeiture once STOICA enters his guilty plea.

*Background on Electronic Benefit Transfer Cards*

9. In the Summer of 2022, California's Department of Social Services (CalDSS) advised the SoCal CFTF that it had detected a rise in fraud associated with

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
-3-

the electronic debit cards issued to individuals and families who qualify for California public benefits like CalFresh and CalWORKS.

10. The U.S. Department of Agriculture also noticed a rise in fraud associated with the Supplemental Nutrition Assistance Program (SNAP) that it administers through its Food and Nutrition Service (FNS). SNAP is a federally funded assistance program designed to help low-income individuals and families purchase food. In California, SNAP public assistance benefits are distributed through CalFresh and loaded to an account that a qualified recipient access by means of an access card, similar to a debit or credit card, called the California Advantage Electronic Benefit Transfer (EBT) Card. The EBT card system was developed to enable government agencies in California and many other states to deliver public assistance benefits to recipients using electronic transfers. The EBT system is a computer-based system through which authorization for qualifying food purchases and cash withdrawals is received from either a point-of-sale (POS) terminal or an ATM.

11. The U.S. Department of Health and Human Services, Administration for Children and Families, administers the Temporary Assistance to Needy Families (TANF) program. TANF is a federally funded assistance program that awards grants to individual states to support low-income families with children. In California, TANF grant funds are used to operate CalWORKS, a state public assistance program that provides cash aid to eligible families with one or more children in the home. Families that apply and qualify for ongoing CalWORKS assistance receive money each month to help pay for housing, food, and other necessary expenses. Like CalFresh, CalWORKS benefits are distributed by CalDSS through the California Advantage EBT card.

12. After a recipient applies for and is approved to receive California public assistance benefits, the benefits are automatically distributed to the recipient's EBT card on a designated day of the month (typically, in California, the first five days of the

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-4-

month). To access their benefits to purchase eligible food items, recipient swipe their card through a point-of-sale terminal, or insert it into an ATM, that records the card number, date, time, and amount of the transaction. The recipient then enters his/her Personal Identification Number (PIN) into a keypad to complete the transaction.

13. The SoCal CFTF has gathered evidence indicating that members of what appear to be one or more criminal enterprises are stealing California EBT account information by installing skimmers on point-of-sale terminals at stores and ATMs in communities with higher concentrations of public benefit recipients. The skimmed data is then often re-encoded onto the magnetic strips of cards that members of the conspiracy use to make unauthorized withdrawals and purchases. These re-encoded cards are sometimes referred to as "cloned" cards. Cloned cards can be a blank white plastic card, or another debit, credit, or gift card. Cloned cards may have names or numbers embossed on the physical face of the card. A common feature of cloned cards is that the account number encoded on the card's magnetic strip will not match the number embossed on the card's face. To facilitate the use of the stolen EBT benefits, members of the scheme will commonly put stickers bearing the account's PIN on the physical cards, or access devices, that are swiped at a point-of-sale terminal along with the account balance.

14. Data provided by CalDSS indicated that, between approximately June 2022 and June 2024, in the Southern District of California and elsewhere, more than approximately $208 million has been stolen using compromised EBT account information. Most of the stolen funds were obtained through unauthorized ATM withdrawals.

<u>Prior Southern California EBT Fraud Operations</u>

15. In July and August 2022, the SoCal CFTF learned of connected incidents at Walmart stores in Chula Vista, National City, and Sherman Heights involving overlay skimmers. In June 2022, National City Police arrested a Romanian national who was

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
-5-

caught installing an overlay skimmer without authorization at a National City Walmart. In July 2022, employees at a Chula Vista Walmart discovered an unauthorized overlay skimmer installed on a point-of-sale terminal. Store surveillance footage showed that the individual arrested by National City Police had, along with an unidentified coconspirator, installed the overlay skimmer at the Chula Vista Walmart two days before his arrest in National City. When arrested by National City Police, the suspect presented a fake European ID that misrepresented his name and nationality. Record checks revealed his true name, Romanian nationality, and indicated that he had entered the U.S. without inspection. Additional investigation revealed that this individual, or someone closely matching his appearance, had installed an overlay skimmer at a Sherman Heights Walmart in March 2022 with the assistance of two additional coconspirators.

16. In Spring 2023, the USSS conducted operations in the Southern and Central Districts of California during which it surveilled ATMs that had historically been used to make unauthorized EBT account withdrawals. During the March operation in Los Angeles, the USSS arrested 14 individuals. During its June 2023 operation, the USSS-San Diego and SoCal CFTF arrested five individuals, along with a sixth individual in July 2023. Five of the six individuals arrested in San Diego County had a history of making of unauthorized EBT account withdrawals in San Diego prior to the night of their arrest and all six had one or more phones on them when arrested. Several of these individuals had also previously installed skimming devices on point-of-sale terminals or inside ATMs, and/or were found in possession of access-device making equipment at the time of their arrest. Of the 20 people arrested in Southern California between March and July 2023, all but one were Romanian. Many of the Romanians arrested possessed fake European IDs.

17. As part of its broader investigation into the theft of EBT account benefits, the SoCal CFTF has obtained warrants to seize and search the phones of individuals

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT -6-

engaged in skimming and EBT access device fraud activities. The consistent pattern is that individuals engaged in these activities are using phones in furtherance of the fraud. Examples include using phones to store and transmit stolen EBT account information, using phones to communicate with co-conspirators in furtherance of the fraud, using phones to reserve and manage access to short-term rental accommodations and rental vehicles, using phones to navigate and for other location-related searches and services (including researching the locations of bank ATMs), using phones to conduct balance inquiries on stolen EBT accounts to determine the amount of the benefit and the date it will be deposited, and using phones to record and photograph fraud-related activities.

### STOICA & CHAABANI's Fraudulent Activities

18. STOICA is Romanian and appears to have entered the United States without inspection in or about March 2022. CHAABANI is Tunisian. She is married to a U.S. citizen and has a legal permanent resident card.

19. As part of its broader EBT fraud investigation, the SoCal CFTF collects surveillance images and transaction records for fraudulent EBT withdrawals from ATMs across San Diego County. Through the review of these and related records, the SoCal CFTF documented STOICA, CHAABANI, and STEFAN's involvement in fraudulent EBT withdrawals.

20. In December 2023, CalDSS was distributing EBT benefits at midnight. On December 1, 2023, beginning just after midnight, STOICA and CHAABANI went together to four different San Diego County bank branches to make unauthorized EBT withdrawals. That night, they attempted to withdraw $29,880 without authorization from the EBT accounts of approximately 24 victims. Of that attempted total, they successfully withdrew $12,380. Their victims were from San Diego, Kern, Los Angeles, and Tulare counties. Surveillance images showed STOICA and CHAABANI traveling together in a black Mercedes.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-7-

21. They repeated this pattern on December 2, 2023, and December 3, 2023. Over those two nights, again traveling together in the black Mercedes, STOICA and CHAABANI attempted to withdraw a total of $29,680 without authorization, of which they successfully withdrew $18,560. They stole this money from the EBT accounts of 29 victims who were from San Diego, Imperial, Fresno, and Los Angeles counties. In total, over those three nights in early December 2023, STOICA and CHAABANI attempted to steal $59,560 from 53 victims.

22. The USSS interviewed victims whose EBT accounts CHAABANI used. The victims confirmed that they had not authorized CHAABANI or STOICA to access their accounts and consistently stated that, despite being reimbursed approximately 10 days after the fraud occurred, the theft forced them to pay their rent late and made them unable to buy food in the interim.

23. In addition to making unauthorized withdrawals with CHAABANI in early December 2023, STOICA also made unauthorized EBT withdrawals with STEFAN in San Diego in early January 2024. In the pre-dawn hours of January 1, 2024, January 2, 2024, and January 3, 2024, STOICA and STEFAN attempted to withdraw $107,940 without authorization. Of this total, they successfully withdrew $57,100. They stole this money from the EBT accounts of approximately 101 victims. During this period, STOICA and STEFAN traveled together in the same car, a silver-grey SUV.

24. Investigators were able to identify STOICA based on photographs and biographical information provided by Romanian authorities. They identified CHAABANI based on comparisons to photos in her immigration file.

## The TARGET DEVICES

25. On September 5, 2024, police officers outside Dallas, Texas arrested STOICA for using a stolen credit card to purchase $13,000-worth of merchandize without authorization at a Fendi luxury goods store. To complete the purchase, STOICA presented a fake Utah driver's license bearing the name of the credit card's

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT -8-

1  authorized user along with STOICA's photo. STOICA was arrested before he could
2  leave the store. After arresting STOICA, officers found a Washington State driver's
3  license with STOICA's photo and the name "Robert Stoica." Following his arrest on
4  Texas state theft charges, STOICA was released to federal immigration authorities.
5  **Target Device-1** was seized from STOICA at the time of his Texas state arrest. USSS
6  later arrested STOICA when he was in immigration custody.

7        26.    On September 23, 2024, CHAABANI was arrested as she was returning to
8  the U.S. at Los Angeles International Airport. She did not have a phone but did have
9  an iPad, **Target Device-2**. CHAABANI has advised immigration authorities that she
10 lives in Los Angeles with her husband.

11       27.    STOICA and CHAABANI met at a concert in the California desert in the
12 spring of 2023. STOICA's rap sheet shows that he was arrested in June 2023 in Rye,
13 New York for credit card fraud. STOICA would have needed some way to
14 communicate with CHAABANI in-between the spring 2023 concert and their
15 December 2023 trip to San Diego together. In my training and experience and that of
16 my colleagues, a cell phone or mobile device, such as the **Target Devices**, would have
17 been the most convenient way for them to communicate, particularly if STOICA was
18 traveling during this period. Similarly, it is common in my experience for people at
19 concerts and other events to take photos of themselves and others at those events, either
20 to keep or to post to social media. Due to their portable nature, cell phones and mobile
21 devices like the **Target Devices** typically have a camera and are used to take such
22 photos, as well as to store, transfer, and post them.

23       28.    Neither STOICA nor CHAABANI are believed to live or work in San
24 Diego. In my training and experience, a cell phone or mobile device, such as the **Target**
25 **Devices,** with a mobile location app, like Google Maps or Apple Maps, would be a
26 common way for out-of-town visitors like STOICA and CHAABANI to navigate San
27 Diego as they traveled to eight different bank branches, particularly as these banks were

28

AFFIDAVIT IN SUPPORT OF SEARCH
WARRANT

-9-

in Hillcrest, Sports Arena, North Park, Oceanside, and Carlsbad. Similarly, mobile devices like the **Target Devices**, are often used to access the web and apps that allow them to find, reserve, and pay for lodging, such as through services like Airbnb. Many of the defendants who have been charged with EBT theft in this District have been found to use short-term rental services like Airbnb to secure lodging while they are in San Diego for the purpose of making unauthorized EBT withdrawals.

29. At the time of his arrest, STOICA told officers that he had taken an Uber to the Fendi store where he tried to make unauthorized credit card purchases. His use of Uber was consistent with him not having any keys and appearing to be alone at the time of his arrest. Uber is a ride-sharing service that users access via an app on the mobile device, which means that STOICA likely used **Target Device-1** to get to the Fendi store where he presented the stolen credit card and fake ID.

30. It is common for Apple products like the iPad to sync or backup a user's iPhone, and thereby store text messages, photos, and contact information. In my training and experience, even if CHAABANI used an iPhone or cell phone as her primary phone, it would be common for her to sync her phone and iPad for a more seamless user interface across her devices.

31. In part for these reasons, I believe that evidence of and relating to the scheme and conspiracy to steal and misuse California EBT card information is likely to be found on the **Target Devices**, including but not limited to coconspirator communications, coconspirator contact information, and geolocation data tending to identify or pertain to the conspiracy's activities in San Diego.

32. I submit there is probable cause to search the **Target Devices** for evidence of and relating to skimming and EBT fraud-related activity. As outlined in part above, individuals engaged in similar activities in Southern California have been shown to use their phones to communicate with coconspirators, research ATM locations, navigate, store and record fraud-related information (e.g. electronic account information, photos

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT -10-

and videos of contraband), conduct balance inquiries via phone and the Internet, and facilitate travel and lodging while conducting fraud-related activities. The investigation to date shows that EBT fraud and related skimming activities involving Los Angeles area Romanians has occurred in San Diego County since at least March 2022.

33. Because STOICA and CHAABANI met in the spring of 2023 and the charged conspiracy went to January 2024, this application and warrant seek authorization to search CHAABANI's iPad (**Target Device-2**) from April 1, 2023 through and including January 31, 2024. For STOICA's cell phone (**Target Device-1**), this application and warrant seek a longer search period of April 1, 2023 through and including September 5, 2024, based on the evidence that STOICA was engaging in access device fraud as recently as September 5, 2024.

Procedures for Electronically-Stored Information

### Cell Phones

34. It is not possible to determine, merely by knowing the cellular phone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT -11-

forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

35. Following the issuance of this warrant, the USSS will collect the subject cellular telephone and subject it to analysis. If there are technological challenges, the examiners may need to consult with other law enforcement partners. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

36. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (**90**) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

37. The USSS is unaware of prior attempts to obtain this evidence.

//
//

## CONCLUSION

38. Based on the evidence and experience described above, I submit there is probable cause to believe that evidence, fruits, and instrumentalities of violation of federal criminal law, namely, 18 U.S.C. §§ 1029(a)(2), (b)(2) (access device conspiracy) and 1029(a)(2), (b)(1) (use and attempted use of unauthorized access devices), as described in Attachment B, are more likely than not to be found on the **Target Devices**, as described in Attachment A.

_____
Special Agent Erik La Com
U.S. Secret Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on November 18, 2024.

_____
HON. ALLISON H. GODDARD
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-13-

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    a. Apple iPhone (inventoried as #412 2024 IE 000245) (Target Device-1); and

    b. Apple iPad, Model A1490, Serial #DMPR58F1FLMJ (Target Device-2)

(collectively, the "Target Devices").

The Target Devices are currently in the custody and control of U.S. Secret Service at 550 W. C St, Suite 660, San Diego, CA 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the Target Devices described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below. The seizure and search of the Target Devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Devices will be electronic records, communications, and data such as emails, text messages, mobile messaging application content, social media content, images, records from third-party and websites applications (e.g., Google Maps), photographs, audio files, videos, browsing history, and location data, for the period of April 1, 2023, up to and including September 4, 2024 for Target Device-1, and April 1, 2023, up to and including January 31, 2024 for Target Device-2, for the following:

a. Communications, records, images, videos, electronic files, and attachments tending to discuss or pertain to access devices (e.g., electronic benefit transfer (EBT) cards, debit cards, the electronic track data embedded on such cards) or account information associated with such device (e.g., PINs, names), including but not limited to the unauthorized use, interception, collection, transfer, or possession of such device or related account information;

b. Communications, records, images, videos, electronic files, and attachments tending to discuss or pertain to an agreement or conspiracy to engage in the unauthorized use or attempted use of unauthorized access devices like stolen public assistance EBT account information;

c. Communications, records, images, videos, electronic files, and attachments tending to discuss or reflect an intent to steal or misuse access devices, or account information associated with such devices, that would tend to discuss or establish motive, opportunity, intent,

       preparation, plan, knowledge, absence of mistake, or lack of accident, with regard to the crimes under investigation, or the knowledge, intent, or willingness to conspire or agree to engage in such conduct;

    d.    Communications, records, images, videos, electronic files, and attachments tending to discuss, reflect, or pertain to the proceeds, fruits, or instrumentalities of or from the use of unauthorized access devices like EBT account information, credit card information, or debit card information;

    e.    Communications, records, images, videos, electronic files, and attachments tending to identify the user(s) of, or persons with control over or access to, the Target Devices, including the telephone numbers associated with any of the Target Devices and, without any date restriction, all contact entries in the Target Devices;

    f.    Communications, records, images, videos, electronic files, and attachments tending to identify the user(s) of the Target Devices' state of mind, knowledge, motive, and voluntariness regarding the crimes under investigation, such as any communications, records, or attachments demonstrating knowledge that EBT or debit or credit card account information, PINs, victim names, skimmers, or access devices were being used without authorization or with an intent to deceive;

    g.    Communications, records, images, videos, electronic files, and attachments tending to identify or establish the use of fake or stolen personal identification information, such as the names or PINs found on California Advantage cards;

    h.    Communications, records, images, videos, electronic files, and attachments tending to identify any co-conspirators, co-schemers, criminal associates, or others involved in a scheme to steal or misuse access device card information; and

      i.    Communications, records, images, videos, electronic files, and attachments that provide context to any communications, records, images, videos, electronic files, and attachments described above, such as electronic messages sent or received in temporal proximity to any relevant electronic message and any content tending to identify the user(s) of the device to be searched;

**which are evidence of violations of 18 U.S.C. § 1029(a)(2), (b)(2) (access device conspiracy), and § 1029(a)(2), (b)(1) (use and attempted use of unauthorized access devices).**